GARNER *v.* WALLACE.

1. TAX SALES—PROOF OF PUBLICATION—SUFFICIENCY.

An affidavit attached to a copy of the petition of the auditor general for the sale of lands delinquent for taxes, and of the order of hearing thereon, stating that "the annexed printed notice was printed * * * for ——— successive weeks, at least once in each week, which publication commenced on the 23d day of September, 1893, and terminated on the 21st day of October, 1893," sufficiently shows a publication of said petition and order once in each week for four successive weeks, as required by section 66 of the tax law of 1893.

2. SAME—STATE LANDS—TRANSMISSION OF LISTS TO TREASURER.

The provision of section 78 of the tax law, requiring the auditor general to furnish to the county treasurer, in October of each year, a statement of all lands theretofore bid off to the State, then remaining unredeemed, was not designed for the benefit of the landowner, and hence a delay in forwarding such statement will not invalidate a subsequent sale by the State.

3. SAME—NOTICE OF SALE.

And, for the same reason, the notice of sale of such lands, provided for by section 79, need not contain a description of the lands.

4. SAME—DEED AS EVIDENCE.

An objection that a tax deed fails to recite the statutory authority for its issuance, and is therefore inadmissible to prove title in the grantee, is without force, where the fact that it was executed in pursuance of the statute appears from the files and records in the tax proceedings, which are introduced in evidence.

Error to Huron; Beach, J.   Submitted October 4, 1898. Decided October 18, 1898.

Ejectment by William A. Garner and George F. Brown against James O. Wallace, Roxiana Wallace, and Frank W. Hubbard.   From a judgment for defendants on verdict directed by the court, plaintiffs bring error.   Reversed.

*Black & Brown*, for appellants.

*W. T. Bope* (*Bacon & Palmer*, of counsel), for appellees.

LONG, J. This action of ejectment is brought by plaintiffs to recover possession of 160 acres of land in Huron county. They claim title under a tax deed for the taxes of 1891. The defendants Wallace are the owners of the original title, and reside upon the land, and defendant Hubbard has an interest in it as mortgagee. The court below directed verdict in favor of defendants, and plaintiffs bring error.

The court, in directing the verdict, based his charge upon the insufficiency of the proof of publication of the petition of the auditor general, and the order thereon for the sale of the lands for taxes. The affidavit recites:

"STATE OF MICHIGAN, ) ss.
   County of Huron.   )

"B. F. Browne, of Sand Beach, Michigan, being duly sworn, deposes and says that he is one of the proprietors and publishers of the Huron Times, a newspaper printed and circulated in said county of Huron, and that the annexed printed notice was printed in said newspaper for —— successive weeks, at least once in each week, which publication commenced the 23d day of September, 1893, and terminated on the 21st day of October, 1893."

The proper jurat was added.

Section 66, Act No. 206, Pub. Acts 1893, provides that—

"The auditor general shall cause a copy of said order and a copy of said petition to be published at least once in each week for four successive weeks next prior to the time fixed for the hearing thereof."

The proper petition and order were annexed to this affidavit, the petition being duly signed by the auditor general, and the order signed by the circuit judge of that circuit, stating that the petition would be brought on for hearing on October 23, 1893, at the opening of court on that day, and that the lands described in the petition

would be sold at the office of the county treasurer on the first Monday of December thereafter. No further proof of publication other than by this affidavit was made on the trial, and counsel for defendants contend that this affidavit does not show a publication for any number of successive weeks, but only that the first publication was on September 23, 1893, and the last one October 21st thereafter; that nothing appears in the affidavit from which it can be inferred that there were any publications between said dates, and therefore it does not show that the petition and order were published at least once in each week for four successive weeks, as required by the statute.

We cannot agree with this contention. The affidavit shows that the annexed printed notice (that is, the petition and order) was printed and published at least once in each week, which publication commenced on September 23, 1893, and terminated on October 21, 1893. Certainly, language could not be employed which would more strongly show that there was a publication at least once in each week between said dates, and hence there was a full compliance with the statute. Once in each week between these dates could not be otherwise than successive weeks. This needs no citation of authority.

Section 78 of the tax law of 1893 provides that—

"The auditor general shall furnish to each county treasurer in the month of October prior to the month of December in the year in which such tax sales are held, as provided in this act, a statement of all lands in his county that may have been bid in for the State, then remaining unredeemed or not otherwise discharged," etc.

It appeared by the testimony of the chief clerk of the auditor general's office that this list was not sent to the county treasurer of Huron county for the year 1894 until November 7th, for the year 1895 until November 2d, and for 1896 until November 20th, and that the land in controversy was included in these lists each year. It is contended that for this reason the sale was void, as the landowner had the right to have these lists sent to the county

treasurer, so that he might know that his lands were contained therein; and that this statute was enacted for his benefit.

We think this contention has no force whatever. The lands after sale are redeemable at the county treasurer's office, as well as at the office of the auditor general. Defendants had one year from the date of the sale to redeem. They could have found the *status* of the lands in the county treasurer's office as well before these lists were transmitted to that office as afterwards. They were deprived of no rights by the delay in the transmission of the lists, and the information was as open to them before as afterwards. Their land had been sold and bid in by the State at the sales of 1893. The original lists remained in the office of the county treasurer, and showed that the land was sold and bid in by the State. By inquiry there, they would have found that they could redeem there, as well as at the office of the auditor general. This statute was not intended to give the landowner any greater rights, but was passed for the purpose of enabling the county treasurer to know what lands remained unredeemed at the auditor general's office. The statute is not mandatory, but merely directory, and for the convenience of the county treasurer.

Section 79 of the tax law of 1893 provides that—

"The auditor general shall cause to be published for four weeks successively, which shall be construed to mean four publications once a week, next previous to the first Monday of December in the years provided by this act, a notice that the lands described in such statement will be offered for sale at public auction at the time and place designated for the regular tax sales," etc.

These notices were published for the years 1894, 1895, and 1896, and each contained a statement that "said statements contain a full description of each parcel of said lands, and may be seen on application at the office of the county treasurer after they are received by him." It appears that none of these notices contained or had attached to it any descriptions of land. It is contended that they

should have contained such descriptions of land as w'ere to be sold; that it was the evident intent of the legislature to give the landowner a second notice before the redemption expired.

This statute refers to lands which had been bid in by the State in former years, and were still held by the State; and its intent was to enable the State, by another offering, to dispose of the lands for the taxes, interest, and expenses it had incurred in bidding them in. It was not for the purpose of giving the owner of the land further notice before the period of redemption expired. If these notices had not been published, the landowner whose lands had been bid in by the State the 1st of December previous could not contend that the time for redemption had been extended by such failure to publish the notices. Such owner had a year after sale to redeem, and no more, whether the notices were published or not. It will clearly be seen that it was not for the benefit of the landowner that such statements should be published, and the statute does not require the lists of such lands to be inserted in or attached to the notice. The lists are published the year previous, and, the owners failing to pay, the State takes the bids, in the absence of other bidders. It would be a useless expense to republish the list the succeeding year. The lists are filed with the county treasurer, and any party who desires can redeem his lands, or purchase the bid of the State.

It is also contended that, the deed not reciting that it was made in execution of the statutory power, it could not properly be received as evidence of the plaintiffs' title. The statute does not give the form of the deed to be executed on tax sales. This deed was executed by Stanley W. Turner, as auditor general of the State, and recites:

" That whereas, in pursuance of the provisions of law, the said parties of the second part, on the 28th day of December, A. D. 1896, became the purchasers of the rights of the State in and to the following described lands, situated in the county of Huron, in said State, which were bid off

to the State for the taxes assessed thereon in the year 1891," etc.

The defendants put in evidence all the proceedings for the sale of the land, including the petition of the auditor general, the order made by the court for the publication thereof, the publication of the petition and order, as well as the decree of the court for the sale of the land. Even if the recitations in the deed were not sufficient to permit the deed to be received as evidence of title,—a point which we need not pass upon,—yet the proceedings and the decree ordering sale show that the deed was made in pursuance of the statute, and together were sufficient to show title in the plaintiffs.

The court should have directed verdict in favor of plaintiffs. The judgment below must be reversed, and a new trial granted.

The other Justices concurred.